**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DISTRICT OF COLUMBIA**

| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington D.C. 20036<br><br>       Plaintiff,<br><br>   v.<br><br>U.S. SECURITIES AND EXCHANGE COMMISSION<br>100 F Street NE<br>Washington, D.C. 20549<br><br>       Defendant. | Civil Action No. _____<br>1:23-cv-1749 |

**COMPLAINT**

1.　　Plaintiff Gibson, Dunn & Crutcher LLP brings this action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), to compel the U.S. Securities and Exchange Commission ("SEC") to produce non-privileged documents currently in its possession that it has unlawfully withheld for well over a year.

2.　　Plaintiff initially requested records from the SEC on September 22, 2020 relating to a series of recent public enforcement actions in which the SEC has taken the position that investors who provide convertible loans to public companies are actually "dealers" subject to registration under the Securities and Exchange Act of 1934 ("Exchange Act").

3.　　Based on discussions with the SEC Office of General Counsel, Plaintiff agreed in September 2021 to clarify and narrow its FOIA request to include only seven specific categories of records.

4.　　Despite Plaintiff diligently following up with the SEC regarding its outstanding

revised FOIA request, the SEC, more than a year and a half later, has failed to produce the documents responsive to the request.

5.      Faced with the SEC's steadfast refusal to comply with its legal obligations under FOIA, Plaintiff brings this lawsuit to obtain the agency records to which it is legally entitled.

## JURISDICTION

6.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## VENUE

7.      Venue is proper in this Court pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C.§ 1391(e).

## PARTIES

8.      Plaintiff Gibson, Dunn & Crutcher is a limited liability partnership organized under the laws of California with its principal place of business in Los Angeles, California.  Plaintiff represents a number of investors who have provided convertible loans to public companies.

9.      The SEC is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1) with its headquarters at 100 F Street NE, Washington, D.C. 20549.  The SEC, which is subject to FOIA, has possession or control of the records Plaintiff seeks and is responsible for fulfilling Plaintiff's FOIA request.

## STATEMENT OF FACTS

10.     The SEC has filed a series of enforcement actions in federal court in recent years alleging that investors who provide convertible loans to public companies are actually "dealers" subject to registration under the Exchange Act.

11.     Under the SEC's extraordinarily broad legal theory in these cases, any business that regularly buys and sells securities must register as a "dealer."  *See, e.g.*, SEC's Mem. Opp'n Defs.'

Mot. Summ. J. at 8, *SEC v. Almagarby*, No. 0:17-cv-62255-MGC (S.D. Fla. 2017), ECF No. 79 ("where a company's business model is based entirely on the purchase and sale of securities, that fact constitutes conclusive proof that the company is a dealer"); SEC's Resp. Opp'n Defs.' Mot. Dismiss at 10, *SEC v. Fife*, No. 1:20-cv-05227 (N.D. Ill. 2020), ECF No. 27 (investor must register as a dealer if "regularly bought and sold securities in more than a few isolated transactions"). This would seemingly mean that virtually every hedge fund, investment company, and family office in the United States has been illegally operating as an unregistered dealer for decades. These enforcement actions therefore present an issue – what it means to be a "dealer" under the Exchange Act – of critical importance to our nation's financial industry and securities markets.

**The First Records Request**

12.     Plaintiff first filed a FOIA request on September 22, 2020 for records relating to the SEC's position in these enforcement actions that investors who provide convertible loans to public companies are actually "dealers" subject to registration under the Exchange Act. Specifically, Plaintiff sought records relating to "the impact on convertible debt lenders, microcap issuers, or the microcap industry of requiring convertible debt lenders to register as dealers under Section 15(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(a)) and/or the impact on convertible debt lenders, microcap issuers, or the microcap industry of treating or defining convertible debt lenders as dealers under Section 3(a)(5) of the Securities Exchange Act of 1934 (15 U.S.C. § 78c(a)(5))." *See* Plaintiff's First FOIA Request, enclosed herewith as Exhibit A.

13.     The request asked that, in the event certain portions of the requested records were properly exempt from disclosure, the SEC disclose any reasonably segregable non-exempt portions of the requested records in compliance with FOIA. This request also stated FOIA's requirement that an agency respond to requests and issue a determination of whether and which records to disclose within twenty business days.

3

14.     This first request went unanswered for six months.  Finally, on March 25, 2021, 184 days after Plaintiff filed the request, the agency's FOIA Branch Chief, Lizzette Katilius, issued a response.  *See* SEC's Response to Plaintiff's First FOIA Request, enclosed herewith as Exhibit B.  The response stated that the SEC's search identified fifty-six pages of responsive records.

15.     The response added, however, that the SEC would withhold thirty-eight of the fifty-six pages under the deliberative process privilege and would only produce eighteen pages with redactions for third-party and SEC-staff contact information.  The eighteen pages that the SEC released referenced additional records that had not been produced.

16.     Ms. Katilius's letter also notified Plaintiff that it had ninety calendar days to appeal the decision to the SEC's Office of General Counsel ("OGC") under Section 552(a)(6) of FOIA (5 U.S.C. § 552(a)(6)).

17.     The SEC's response contained no explanation of its search methodologies or how it determined that the fifty-six pages it identified were the only materials responsive to Plaintiff's FOIA request.

18.     On June 23, 2021, Plaintiff timely appealed to the SEC's OGC.  *See* Plaintiff's FOIA Appeal, enclosed herewith as Exhibit C.  The appeal detailed why the SEC's search for responsive records was inadequate, how the SEC improperly withheld records under the deliberative process privilege, and why the SEC improperly redacted the records it did produce.

19.      In its appeal, Plaintiff stated FOIA's requirement (5 U.S.C. § 552(a)(6)(A)(ii)) that an agency make a determination with respect to an appeal within twenty working days of receiving the appeal.

## Plaintiff's Modified Search Request

20.     On July 19, 2021, OGC contacted Plaintiff requesting clarification regarding the scope of the request to search for responsive records beyond the fifty-six pages initially identified.

*See* OGC Jul. 19, 2021 Email to Plaintiff, enclosed herewith as Exhibit D.

21.    Based on a subsequent discussion with an OGC attorney, on September 4, 2021, Plaintiff sent OGC a letter modifying the scope of its request.  Specifically, to help the SEC identify responsive records, this modified search request listed seven specific categories of records that Plaintiffs sought.  *See* Plaintiff's Sep. 4, 2021 Letter to SEC, enclosed herewith as Exhibit E.

22.    On September 8, 2021, following a call between Plaintiff and OGC, Plaintiff sent the SEC another letter with minor revisions to three categories outlined in the September 4 letter. *See* Plaintiff's Sep. 8, 2021 Letter to SEC, enclosed herewith as Exhibit F.

23.    In the final iteration of the modified FOIA request, Plaintiff sought:

    a.  ***First***, "[a]ny memorandum addressing whether convertible debt lenders must register as 'dealers.'  This request is limited to memoranda produced by or furnished to (a) the Office of General Counsel, (b) Division of Corporation Finance, or (c) Division of Enforcement personnel in the Washington office, the Salt Lake City Regional Office, the Miami Regional Office, or the Chicago Regional Office."

    b.  ***Second***, "[a]ny email communications between Commission personnel and third-parties (external to the Commission) concerning whether convertible debt lenders must register as 'dealers.'  This request is now limited to email communications to, from, copying, or blind copying (a) members of the litigation or investigation teams in *Keener*, *Fierro*, *River North*, or *Almagarby* or (b) personnel in the Division of Corporation Finance working on File No. S7-24-20 ('Rule 144 Holding Period and Form 144 Filings,' RIN 3235-AM78, Securities Act Release No. 10,911, Exchange Act

Release No. 90,773)."

c. ***Third***, "[a]ny Any documents or communications concerning the Commission's authorization to file the enforcement actions in *Keener*, *Fierro*, *River North*, or *Almagarby*. This request is now limited to documents or communications that were produced or that occurred within seven calendar days after the Commission authorized the filing of the enforcement actions in *Keener*, *Fierro*, *River North*, or Almagarby. The scope of this request is now further limited such that the Staff may limit its search to (a) the offices of the Commissioners, (b) to the Office of General Counsel, and (c) to the Division of Enforcement personnel working on *Keener*, *Fierro*, *River North*, or *Almagarby*."

d. ***Fourth***, "[a]ny communications between (a) Division of Enforcement personnel in the Salt Lake City Regional Office and (b) Division of Enforcement personnel in either the Miami Regional Office or the Chicago Regional Office. This request is limited to communications that contain both the words 'convertible' and 'dealer.'"

e. ***Fifth***, "[a]ny documents or communications of James Thibodeau (including any communications that are to, from, copying, or blind copying James Thibodeau) that contain both the words 'dealer' and 'convertible.'"

f. ***Sixth***, "[a]ny communications to, from, copying, or blind copying Division of Enforcement personnel (a) that contain both the words 'dealer' and 'convertible' and (b) that are to, from, copying, or blind copying Division of Corporation Finance personnel or Office of General Counsel personnel.

6

This request includes (but is not limited to) any such communications between Division of Enforcement personnel and John Fieldsend or Sean Harrison.

g. **Seventh**, "[a]ny email communications: (a) that are between Commission personnel and email accounts ending in '@thebasilelawfirm.com'; and (b) that contain both the words 'dealer' and 'convertible.'"

## OGC's Decision

24. On September 16, 2021, OGC issued a decision remanding the appeal in part and denying it in part. *See* OGC's Decision on Plaintiff's FOIA Appeal, enclosed herewith as Exhibit G.

25. Given Plaintiff's willingness, after discussions with OGC, to modify its initial FOIA request to target seven specific categories of documents, OGC determined that "there is no need to review the search conducted by the FOIA Office in response to [Plaintiff's] initial request;" instead, [Plaintiff's] "amended FOIA request is remanded to the FOIA Office for processing."

26. OGC also determined that the SEC did not perform an adequate review of the thirty-eight pages of records withheld under the deliberative process privilege and found that some material was non-exempt. Accordingly, OGC remanded the matter to the FOIA Office for further review and production of the non-exempt material.

27. OGC denied the appeal with respect to Plaintiff's request that the SEC disclose the redacted contact information in the eighteen pages of released documents.

## Defendant's Repeated Failures to Respond to the Remanded Requests

28. On September 16, 2021, the SEC FOIA Office sent Plaintiff a letter acknowledging OGC's decision. *See* SEC's Sep. 16, 2021 Letter to Plaintiff, enclosed herewith as Exhibit H.

29. On February 24, 2022, five months after OGC's decision and the FOIA Office's

acknowledgement letter, the FOIA Office inexplicably emailed Plaintiff asking whether it was still interested in the FOIA Office responding to Plaintiff's FOIA request. *See* Email Chain between Plaintiff and SEC, enclosed herewith as Exhibit I.

30.     On February 25, 2022, Plaintiff replied that it indeed wanted the SEC to respond to its FOIA request. In its reply email, Plaintiff expressed concerns about the SEC's repeated failures to comply with the requirements of FOIA, including the SECs unlawful delays in producing both the portions of the thirty-eight pages that OGC had determined were not exempt from production under the deliberative process privilege, as well as the seven targeted categories of records in Plaintiff's modified FOIA request. Plaintiff asked the FOIA Office to confirm when it would produce responsive records.

31.     On March 3, 2022, Tina L. Churchman, a staff member in the SEC's Office of Support Operations, replied to the same email chain. Ms. Churchman said that the SEC could not provide an exact response date relating to the non-exempted portions of the thirty-eight withheld pages, but hoped to have a response no later than March 28, 2022. Ms. Churchman also stated that the SEC was treating the modified request for the seven targeted categories of records as a new request with a different FOIA tracking number. Ms. Churchman attached a letter acknowledging this supposedly "new" request. *See* SEC's Acknowledgment of New FOIA Request, enclosed herewith as Exhibit J. The letter dated the SEC's receipt of the request as March 2, 2022, even though Plaintiff had actually sent the modified FOIA request on September 8, 2021 – almost six months earlier.

32.     The SEC went silent after Ms. Churchman's email and letter. Therefore, on June 8, 2022, almost nine months after OGC's decision and more than three months after Ms. Churchman's letter acknowledging the "new" request, Plaintiff replied to the email chain to

express continued concerns with the SEC's repeated failure to comply with FOIA, both with respect to the thirty-eight pages the SEC withheld from production and the SEC's failure to produce any records in response to the modified request for seven targeted categories of records. Plaintiff requested that the SEC respond by June 21, 2022.  Plaintiff also notified the SEC that it would be forced to file a lawsuit to compel compliance with FOIA if the SEC remained unwilling to comply with its legal obligations.

33.     On August 16, 2022, 334 days after OGC determined that portions of the thirty-eight pages had been improperly withheld, the SEC finally produced twenty-three of the thirty-eight pages.  *See* SEC Aug. 16, 2022 Production, enclosed herewith as Exhibit K.

34.     To this date, however, the SEC has still not responded to Plaintiff's September 8, 2021 modified FOIA request for the seven targeted categories of records.

### Documents Responsive to the Seventh Category of Requests

35.     As an example of the SEC's disregard for its FOIA obligations, the SEC has failed to produce any documents in response to the modified FOIA request's seventh category of records despite the fact that, in one of the "dealer" enforcement actions, the SEC has already searched for, collected, and reviewed these emails and conceded they are non-privileged.

36.     Specifically, in *SEC v. Fife*, No. 1:20-cv-05227 (N.D. Ill. 2020), in which Plaintiff here represents the defendants, the defendants requested that the SEC produce "all communications with the Basile Law Firm…concerning market adjustable convertible securities." Similarly, the seventh category of records in Plaintiff's modified FOIA request was "[a]ny email communications:  (a) that are between Commission personnel and email accounts ending in '@thebasilelawfirm.com'; and (b) that contain both the words 'dealer' and 'convertible.'"  *See* CVP's First Set of Requests for Production, enclosed herewith as Exhibit L.

37.     In *Fife*, the SEC objected to the request for communications with the Basile Law

Firm on relevance and burden grounds. *See* SEC's Responses and Objections to CVP's First Set of Requests for Production, enclosed herewith as Exhibit M. However, relevance and proportionality objections are not applicable in the FOIA context.

38.     The SEC did not assert in *Fife* that these documents were privileged, nor could it have done so given that the Basile Law Firm is a third-party plaintiffs' law firm. The SEC has thus conceded these documents are not privileged because, as SEC attorney Eric Phillips, who represents the SEC in *Fife*, noted in a March 17, 2023 email to Plaintiff: "FRCP 34 does require the SEC to raise any privilege objections when responding to the requests and to state whether the SEC is withholding documents on the basis of its objections." *See* SEC Mar. 17, 2023 Email to Plaintiff, enclosed herewith as Exhibit N. The SEC did not raise any privilege objection with regard to the communications with the Basile Law Firm. The SEC has also already searched for, collected, and reviewed communications with the Basile Law Firm responsive to the FOIA request. In *Fife*, the SEC filed the declaration of Martha Mitchell, an employee in the SEC's Office of the Chief Information Officer. *See* Mitchell Declaration, enclosed herewith as Exhibit O. In that declaration, Ms. Mitchell stated that the SEC conducted a search for emails between any SEC custodian and five Basile Law Firm email addresses that hit on certain terms relating to convertible loans. According to Ms. Mitchell, this search uncovered 261 emails. And during a March 15, 2023 hearing in *Fife*, the Court directed SEC attorney Eric Phillips to review the 261 emails and produce those that specifically relate to the defendants in *Fife*. *See* Transcript of Mar. 15, 2023 Hearing in *Fife* at 67, 71, enclosed herewith as Exhibit P. The SEC subsequently produced just 16 emails.

39.     The SEC has thus illegally withheld *at least* 245 non-privileged emails responsive to Plaintiff's FOIA request, despite having already searched for, collected, and reviewed these

emails.

## CAUSE OF ACTION

40.     Plaintiff repeats and incorporates by reference paragraphs 1-39.

41.     Plaintiff submitted its revised FOIA request to the SEC on September 8, 2021.

42.     In the more than a year and a half since then, the SEC has not responded to the FOIA request.  It has not produced a single record in response to the FOIA request, nor has it claimed that any records are exempt from production pursuant to FOIA.  Rather, the SEC has simply ignored its legal obligation under FOIA to make a determination regarding Plaintiff's FOIA request within twenty business days.  *See* 5 U.S.C. § 552(a)(6)(A).

43.     The SEC has therefore improperly withheld agency records from Plaintiff, in violation of FOIA.

44.     Because the SEC failed to comply with FOIA's time-limit provisions, Plaintiff is deemed to have exhausted its administrative remedies.  5 U.S.C. § 552(a)(6)(C)(i).

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

(a)     order the SEC to promptly conduct a reasonable search for and produce all records responsive to Plaintiff's September 8, 2021 revised FOIA request;

(b)     assess against the SEC reasonable attorney's fees and other litigation costs Plaintiff reasonably incurred in prosecuting this action, in accordance with 5 U.S.C. § 552(a)(4)(E); and

(c)     award Plaintiff such other relief as this Court considers just and proper.

Respectfully submitted,

Dated:  June 15, 2023

*/s/:  Helgi C. Walker*

Helgi C. Walker (D.C. Bar No. 454300)
Brian Richman (D.C. Bar No. 230071)
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Phone: 202.955.8500
Fax:    202.467.0539
Email: HWalker@gibsondunn.com
Email:  BRichman@gibsondunn.com

*Attorneys for Plaintiff*